UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 14-20893-CV-UNGARO


CLIFFORD A. ZUCKER,

   Plaintiff,

v.

U.S. SPECIALTY INSURANCE CO.,

   Defendant.

_____/


**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF UNDISPUTED FACTS ........................................................ 3

III.    STANDARD OF REVIEW .................................................................................. 5

IV.     INSURANCE POLICY CONSTRUCTION ....................................................... 6

V.      THERE ARE NO GENUINE ISSUES OF MATERIAL FACT
        RESOLUTION OF WHICH WOULD NEGATE THE CONCLUSION
        THAT THE USSIC POLICY, AS REASONABLY INTERPRETED,
        PROVIDES COVERAGE FOR THE TAX REFUND TRANSFER
        CLAIMS ............................................................................................................... 8

        A.      The Coverage Grant Requirements Are Met ......................................... 9

        B.      The Tax Refund Transfer Claims Are Deemed Timely Made ........... 10

VI.     NO POLICY EXCLUSIONS APPLY TO NEGATE COVERAGE ......................... 13

        A.      Prior Acts Exclusion ........................................................................... 13

        B.      Prior Notice Exclusion ........................................................................ 14

VII.    CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Alstrin v. St. Paul Mercury Ins. Co.*,
  179 F. Supp.2d 376 (D. Del. 2002)................................................................................ 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................................ 5

*Auto-Owners Ins. Co. v. Anderson*,
  756 So.2d 29 (Fla. 2000).................................................................................................. 6

*Bailer v. Erie Ins. Exchange*,
  687 A.2d 1375 (Md. 1997) ............................................................................................... 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................................................ 5

*Chatz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  372 B.R. 368 (N.D. Ill. 2007) ........................................................................................ 10

*Demshar v. AAACon Auto Transport, Inc.*,
  337 So.2d 963 (Fla. 1976).............................................................................................. 8

*Fayad v. Clarendon Nat'l Ins. Co.*,
  899 So.2d 1082 (Fla. 2005)......................................................................................... 7, 8

*Fla. Dep't of Fin. Servs. v. Nat'l Union Fire Ins. Co.*,
  No. 4:11cv242/RS-WCS, 2012 WL 760606 (N.D. Fla. Mar. 7, 2012) ........................... 12

*Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc.*,
  874 So.2d 26 (Fla. 2d DCA 2004) ................................................................................... 6

*Gidney v. Axis Surplus Ins. Co.*,
  140 So.3d 609 (Fla. 3d DCA 2014) ............................................................................... 10

*Great American Ins. Co. v. Gen. Contractors & Contsr. Mgmt., Inc.*,
  No. 07-21489, 2008 WL 2245986 (S.D. Fla. May 29, 2008)............................................. 5

*Hartford Accident and Indemnity Co. v. Beaver*,
  466 F.3d 1289 (11th Cir. 2006) .............................................................................. 7, 13

*Hodges v. Nat'l Union Indem. Co.*,
  249 So.2d 679 (Fla. 1971)............................................................................................... 8

*Hyman v. Nationwide Mut. Fire Ins. Co.*,
    304 F.3d 1179 (11th Cir. 2002) ................................................................. 5

*In re DBSI, Inc.*,
    Case No. 08-12687-PJW, 2011 WL 3022177 (Bankr. D. Del. July 22, 2011)................. 10

*James v. Gulf Life Ins. Co.*,
    66 So.2d 62 (Fla. 1953)....................................................................... 7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .......................................................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................... 5

*Michigan Millers Mut. Ins. Corp. v. Benfield*,
    140 F.3d 915 (11th Cir. 1998) ........................................................... 7, 13

*Nixon v. U.S.F.&G.*,
    290 So.2d 26 (Fla. 1973)................................................................... 7, 8

*Northland Cas. Co. v. HBE Corp.*,
    160 F. Supp.2d 1348 (M.D. Fla. 2001)...................................................... 6, 8

*Pasteur Health Plan, Inc. v. Salazar*,
    658 So.2d 543 (Fla. 3d DCA 1995) ........................................................... 7

*Penzer v. Transp. Ins. Co.*,
    29 So.3d 1000 (Fla. 2010)................................................................... 7

*Purelli v. State Farm Fire & Cas. Co.*,
    698 So.2d 618 (Fla. 2d DCA 1997) ........................................................... 7

*Resolution Trust Corp. v. Artley*,
    24 F.3d 1363 (11th Cir. 1994) ............................................................. 12

*Riveroll v. Winterthur Int'l Ltd.*,
    787 So.2d 891 (Fla. 3d DCA 2001) ........................................................... 6

*Sanz v. Reserve Ins. Co.*,
    172 So.2d 912 (Fla. 3d DCA 1965) ........................................................... 7

*State Farm Mut. Auto. Ins. Co. v. Roach*,
    945 So.2d 1160 (Fla. 2006).................................................................. 6

*Taurus Holdings, Inc. v. U.S.F.&G.*,
    913 So.2d 528 (Fla. 2005)................................................................... 8

*The Praetorians v. Fisher*,
   89 So.2d 329 (Fla. 1956).................................................................. 7

*TIG Ins. Co. v. Smart School*,
   401 F. Supp.2d 1334 (S.D. Fla. 2005) .............................................. 6

*Trumpet Vine Investments, N.V. v. Union Capital Partners I*, Inc.,
   92 F.3d 1110 (11th Cir. 1996) .......................................................... 6

*U.S. Fire Ins. Co. v. Fleekop*,
   682 So.2d 620 (Fla. 3d DCA 1966),
   review denied, 691 So.2d 1082 (Fla. 1997)............................... 11, 12

*Waterford Township General Employees Retirement System v.*
   *BankUnited Fin. Corp., et al.*, No. 08-CIV-22572 (S.D. Fla.) ......... 15

*Westmoreland v. Lumbermens Mut. Cas. Co.*,
   704 So.2d 176 (Fla. 4th DCA 1997) ................................................. 7

**Statutes**

Fla. Stat. § 627.4145 ...................................................................................... 7

West's F.S.A. § 726.106(2) ........................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................... 1

Local Rule 56.1 ............................................................................................... 1

Local Rule 56.1(a) .......................................................................................... 3

Plaintiff Clifford A. Zucker (the "Plan Administrator"), not individually, but as Plan Administrator for BankUnited Financial Corporation ("BUFC"), and as assignee of Ramiro A. Ortiz ("Mr. Ortiz") and Humberto L. Lopez ("Mr. Lopez, and together with Mr. Ortiz, the "Insureds"), pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 56.1 of the Local Rules for the United States District Court for the Southern District of Florida (the "Local Rules"), hereby moves this Court for summary judgment that the Directors, Officers and Corporate Liability Insurance Policy No. 14-MGU-08-A17883 (the "USSIC Policy") issued by the Defendant, U.S. Specialty Insurance Company ("USSIC") to BUFC covers the underlying claims (the "Tax Refund Transfer Claims") brought by the Plan Administrator against the Insureds for breach of fiduciary duty by virtue of their approving the transfers of certain tax refunds received by BUFC in 2009 (the "Tax Refund Transfers"), and that none of the exclusions relied on by USSIC apply.

## I.      INTRODUCTION

The USSIC Policy's plain language demonstrates, and USSIC's Rule 30(b)(6) designees' testimony confirms, that the USSIC Policy applies to claims arising out of wrongful acts that occurred after USSIC issued its policy.  As USSIC's claims underwriter testified, the reason that USSIC offered to insure BUFC (for a $700,000 premium)[1] when USSIC fully expected that BUFC would fail (see SOF at ¶ 8), was because USSIC knew that BUFC and its wholly-owned subsidiary BankUnited, FSB (the "Bank") had already entered into a Memorandum of Understanding with federal regulators.  See SOF at ¶ 7.  In fact, BUFC's distressed situation and anticipated failure were central to USSIC's business decision to take advantage of what it

---

[1]      See Plaintiff's Statement Of Undisputed Material Facts In Support Of Its Motion For Summary Judgment And Incorporated Memorandum Of Law ("SOF") at ¶ 8.

characterized as an "opportunistic play." *See* SOF at ¶ 8.  From the beginning, USSIC and BUFC recognized that the USSIC Policy would be "RDI," that is, retro date inception (*see* SOF at ¶ 5) – the USSIC Policy would not cover claims based on wrongful acts that had already occurred; but the *quid pro quo* was that it would cover claims based on any wrongful acts that occurred on or after November 10, 2008, notwithstanding the close supervision by the Bank's federal regulator, the Office of Thrift Supervision (the "<u>OTS</u>").

However, when a claim was filed based upon wrongful acts which occurred in 2009, rather than live up to its obligations under the plain language of the policy, USSIC abandoned the Insureds, leaving them to face a potential liability in excess of $45 million.  USSIC's no-coverage interpretation of the USSIC Policy contradicts the plain meaning of the policy language; it has no basis in the facts or the law.  Having accepted over $700,000 for a single year's coverage, USSIC's duty to act in good faith with respect to its Insureds demanded more.

The Tax Refund Transfer Claims against the Insureds were (and are) covered by the USSIC Policy, and no exclusion or defense applies.  When USSIC denied coverage, it encouraged the Insureds to "take appropriate action to ensure that their interests are protected." *See* SOF at ¶ 40.  Following these instructions, the Insureds were left with two choices:  (1) fight the claims in court and, if unsuccessful, suffer a ruinous, multi-million dollar judgment; or (2) settle the claims for a fraction of the total exposure and agree to allow the Plan Administrator to pursue collection from USSIC.  The Insureds elected to engage in settlement discussions and, ultimately, agreed to settle the underlying claims, pursuant to a Settlement and Assignment Agreement dated May 5, 2013 (the "<u>Settlement and Assignment Agreement</u>") (a *Coblentz* settlement) for $15 million – a small fraction of their potential exposure and well within the USSIC Policy's limits.  *See* SOF at ¶ 43.  The complaint initiating this action (the "<u>Complaint</u>")

accordingly contains counts for breach of contract, violation of Florida Statute § 624.155(1)(b)(1), and common law bad faith.

Pursuant to the agreement of the parties and orders of this Court (*see* ECF Nos. 31 and 46), Phase I of this case is now before the Court for decision pursuant to this Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion").

In U.S. Specialty Insurance Company's Amended Answer and Affirmative Defenses (*see* ECF No. 36) (the "Amended Answer"), USSIC asserted 29 separate affirmative defenses, although at the USSIC Rule 30(b)(6) deposition, it conceded that four of them were ineffectual: Uninsured Persons, Failure to Cooperate, No Action Provision, and No Assignment Provision. It is impossible to know on which defenses USSIC, following completion of discovery, will rely. Accordingly, the Plan Administrator will explain why the one exclusion (the Prior Acts Exclusion) which USSIC analyzed in its denial letter of November 30, 2012 (the "11/30/12 Denial Letter", a copy of which is attached to the SOF as Exhibit BB), and one other defense to which passing reference was made in a footnote, do not apply. Of course, to the extent that USSIC raises any other defenses to this Motion or at any other point in this case, the Plan Administrator reserves the right to reply to such defenses.

## II.    STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1(a), the Plan Administrator is simultaneously filing the separate SOF in support of the Motion. The SOF is incorporated herein by reference and contains an appendix of pertinent record exhibits. References to the SOF in this Motion are to the separately numbered paragraphs of the SOF.

In summary, however, in August of 2008, BUFC began discussions with USSIC regarding D&O insurance coverage for BUFC's officers and directors. *See* SOF at ¶ 5. During the process of underwriting, USSIC came to learn that BUFC and its subsidiaries, including the

Bank, were in financial difficulty.  *See* SOF at ¶ 6.  USSIC saw this as an opportunity to "write a very restrictive policy and get some premium for it."  *See* SOF at ¶ 8.  When USSIC was quoting the coverage, the underwriter deleted the phrase "(Broad Form)" from the standard form of the Prior Acts Exclusion, and substituted in boldface type "(Policy Inception)" so that the endorsement as contained in the quote and binder read "Prior Acts Exclusion (Policy Inception)", in an attempt to limit questions about the breadth of the quoted policy.  *See* SOF at ¶ 11.  It was not until November 26, 2008, when a copy of the policy was mailed to BUFC in Florida, that USSIC sent the unedited version of the Exclusion.  *See* SOF at ¶ 12.

During the USSIC Policy period, on or about January 9, 2009, BUFC received a check from the United States Treasury (the "<u>U.S. Treasury</u>") payable to BUFC in the amount of $19,871,221.06 in payment of a tax refund (the "<u>January 2009 Refund</u>").  *See* SOF at ¶ 15.  The January 2009 Refund was transferred (the "<u>January 2009 Transfer</u>") from BUFC (the recipient of the January 2009 Refund) to the Bank without much thought, on the ground that, as the Bank had paid the taxes giving rise to the January 2009 Refund, the money should go back to the Bank. There was no order or directive from the OTS requiring the January 2009 Transfer to be made. *See* SOF at ¶ 17.  In March of 2009, BUFC instructed the U.S. Treasury to transfer a second tax refund in the amount of $25,812,825.00 (the "<u>March 2009 Refund</u>") to which BUFC was entitled to the Bank.  *See* SOF at ¶ 18.  Just as with the January 2009 Refund, there was no instruction or directive from the OTS to pay the March 2009 Refund directly to the Bank.  *See* SOF at ¶ 20. The effect of transferring the January 2009 Refund and the March 2009 Refund to the Bank (on the eve of bankruptcy) was to deprive the creditors of BUFC of over $45 million in cash that could have potentially been used to satisfy their claims (which claims totaled several hundred millions of dollars).

4

On May 21, 2009, the OTS closed the Bank.  *See* SOF at ¶ 22.  On the next day, May 22, 2009, BUFC filed a petition for relief (the "Petition") under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").  *See* SOF at ¶ 23.  On May 29, 2009, an Official Committee of Unsecured Creditors (the "Committee") was appointed in BUFC's bankruptcy cases, retained counsel, and initiated a preliminary review of whether claims existed against insiders of the Debtors.  *See* SOF at ¶ 24.  Ultimately, that investigation led to the filing of the Tax Refund Transfer Claims.

## III.    STANDARD OF REVIEW

The Federal Rules authorize entry of summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002); *Great American Ins. Co. v. Gen. Contractors & Contsr. Mgmt., Inc.*, No. 07-21489, 2008 WL 2245986 at *2 (S.D. Fla. May 29, 2008) (Ungaro, J.).  To obtain summary judgment, the movant need only show "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  When a motion for summary judgment is supported by documentary and testimonial evidence, the nonmoving party may not rest upon the allegations or denials of its pleadings but must instead present significant probative evidence to establish a genuine issue of material fact.  *Id.* at 327; *Anderson*, 477 U.S. at 256.

With respect to determining coverage issues, summary judgment is generally appropriate inasmuch as the construction and legal effect of a written contract are matters of law to be

determined by the Court.  *See, e.g., TIG Ins. Co. v. Smart School*, 401 F. Supp.2d 1334, 1337 (S.D. Fla. 2005) (Ungaro, J.) ("[s]ummary judgment is appropriate 'in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'") (*quoting Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1358 (M.D. Fla. 2001)).

In this Motion, the Plan Administrator establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law that the claims he asserted against the Insureds are covered by the USSIC Policy.

## IV.    INSURANCE POLICY CONSTRUCTION

The USSIC Policy which is at issue in this matter is governed by Florida law.  "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Florida generally applies the rule of *lex loci contractus* in determining what law applies in contract claims.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006).  As the USSIC Policy was issued to BUFC in Florida, and BUFC is a Florida corporation with its principal place of business in Florida, Florida law applies.  *See* SOF at ¶ 12.

"Like other contracts, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just."  *Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So.2d 26, 29 (Fla. 2d DCA 2004).  "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."  *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000); *see also Riveroll v. Winterthur Int'l Ltd.*, 787 So.2d 891, 892 (Fla. 3d DCA 2001).  When a policy exclusion has "completely swallowed up the insuring provision," the "grossest form of ambiguity" is created.  *Purelli v.*

*State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997) (*quoting Bailer v. Erie Ins. Exchange*, 687 A.2d 1375, 1380 (Md. 1997)).

The language of an insurance policy is required to be given its ordinary meaning – the meaning a reasonable person in the position of the insured would give the terms. *See Penzer v. Transp. Ins. Co.*, 29 So.3d 1000, 1005 (Fla. 2010) ("[I]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage."); *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So.2d 1082, 1086 (Fla. 2005); *Nixon v. U.S.F.&G.*, 290 So.2d 26, 29 (Fla. 1973). Insurance contracts, "as contracts of adhesion," are construed strictly against the insurer that drafted the policy and liberally in favor of coverage for the policyholder. *Pasteur Health Plan, Inc. v. Salazar*, 658 So.2d 543, 545 (Fla. 3d DCA 1995); Fla. Stat. § 627.4145 ("readable" policy language legally mandated). Coverage will be found to exist "whenever possible". *Sanz v. Reserve Ins. Co.*, 172 So.2d 912, 913 (Fla. 3d DCA 1965). Insurance policies, written by experts, are construed to avoid absurd results. *See The Praetorians v. Fisher*, 89 So.2d 329, 333 (Fla. 1956); *James v. Gulf Life Ins. Co.*, 66 So.2d 62 (Fla. 1953); *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 188 (Fla. 4th DCA 1997) (Judge Gross, specially concurring).

Once the insured establishes a loss apparently within the terms of an insurance policy, the burden shifts to the insurer to prove that the claim is excluded from coverage under an applicable exception or exclusion. *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925 (11th Cir. 1998) (citations omitted); *Hartford Accident and Indemnity Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) ("[w]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation. Exclusionary clauses

are generally disfavored.") (*quoting Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001); *see also Demshar v. AAACon Auto Transport, Inc.*, 337 So.2d 963, 965 (Fla. 1976) (noting: "[e]xclusionary clauses in liability insurance policies are always strictly construed."); *Fayad*, 899 So.2d at 1086; *Nixon*, 290 So.2d at 29 (exclusionary clauses limiting coverage are construed even more strictly against the insurer than coverage provisions.) Accordingly, to the extent that USSIC raises any other defenses to this Motion or at any other point in this case, the Plan Administrator reserves the right to reply to such defenses.

An insurer bears the heavy burden of proving its construction is the only reasonable construction of the policy. *See Nixon*, 290 So.2d at 29-30; *Fayad*, 899 So.2d at 1086. Even if the insurer's interpretation of the policy is arguably "reasonable," if there are two such reasonable interpretations, the policyholder's interpretation in favor of coverage **must** be adopted. *Id.*; *see also Taurus Holdings, Inc. v. U.S.F.&G.*, 913 So.2d 528, 532 (Fla. 2005) (explaining that ambiguity is construed in favor of insured and strictly against drafter.) Further, "the insurer is held responsible for clearly setting forth what damages [losses] are excluded from coverage under the terms of the policy." *Fayad*, 899 So.2d at 1086. "The fine print of an insurance policy … should not be read to exclude coverage unless it plainly and with certainty 'brings home' in unambiguous language to the insured that he is not protected in a certain particular." *Hodges v. Nat'l Union Indem. Co.*, 249 So.2d 679, 681 (Fla. 1971).

## V.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT RESOLUTION OF WHICH WOULD NEGATE THE CONCLUSION THAT THE USSIC POLICY, AS REASONABLY INTERPRETED, PROVIDES COVERAGE FOR THE TAX REFUND TRANSFER CLAIMS

Based upon a plain reading of the policy language, the Tax Refund Transfer Claims are covered by Insuring Agreement (A) of the USSIC Policy.  In particular, the USSIC Policy provides that:

> The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made during the **Policy Period** or Discovery Period (if applicable), against the **Insured Persons** for **Wrongful Acts**, except when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement.

USSIC Policy, Insuring Agreement (A), at p. 2 (emphasis in original), attached as Exhibit A to the SOF; *see also* Deposition Of Amanda Music, 10/28/14 ("Music Dep.") at 169:4-5 (Q. "We are in agreement, are we not, that this case falls under ensuring *[sic]* agreement A not B?" A. "To the extent one of the insuring agreements is implicated, it would be A, yes."), attached as Exhibit G to the SOF.

**A.     The Coverage Grant Requirements Are Met**

USSIC admits that the Insureds are "Insured Persons" within the meaning of the USSIC Policy.   *See* Defendant U.S. Specialty Insurance Company's Responses and Objections to Plaintiff's First Set of Requests for Admissions, Nos. 10, 12 (attached as Exhibit D to the SOF); Music Dep. at 169:6-8 ("Q. You agree, do you not, that Mr. Ortiz and Mr. Lopez were insured persons?" A. "I do.").   Further, the Insureds suffered a "Loss," as defined in the USSIC Policy. In particular, Loss is defined in the USSIC Policy to include "any damages, settlements, judgments or other amounts . . . that (1) an **Insured Person** is legally obligated to pay as a result of any Claim . . . ."   USSIC Policy, Definitions (G)(1), at p. 3 (emphasis in original).   The Insureds became legally obligated to pay as a result of a Claim when the Bankruptcy Court approved the Settlement and Assignment Agreement.   *See* SOF at ¶ 44; *See also* Music Dep. at 171:8-14.   The claimed breaches of fiduciary duty constitute "Wrongful Acts," which include any "actual or alleged act, error, misstatement, misleading statement, omission or breach of duty: (a) by an **Insured Person** in his or her capacity as such . . . ."   USSIC Policy, Definitions (P)(1), at p. 4 (emphasis in original).

The Insureds' "Loss" arose from "Claims," defined as "any written demand for monetary or non-monetary relief," or "any civil proceeding commenced by service of a complaint or similar proceeding . . . ."  USSIC Policy, Definitions (B)(1) and (B)(2).

**B.     The Tax Refund Transfer Claims Are Deemed Timely Made**

Insuring Agreement (A) covers Claims "first made during the policy period."  The Tax Refund Transfer Claims at issue here are deemed to have been made during the policy period of the USSIC Policy (the "Policy Period") by virtue of, among other things, Condition (B)(3) of the USSIC Policy.  Condition (B)(3) provides as follows:

> If, during the **Policy Period** [11/10/2008 to 11/10/2009] or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reason for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

USSIC Policy, Condition (B)(3), at p. 7 (emphasis in original).

As the Court explained in *Gidney v. Axis Surplus Ins. Co.*, 140 So.3d 609 (Fla. 3d DCA 2014), such a provision:

> provides coverage for claims made subsequent to the policy period but that relate back to a prior written report by the insured.  Under this provision, the insured gives the insurer a report of a wrongful act it committed during the policy period.  By reporting its wrongful act, even though no claim has yet been made, the insured puts the insurer on notice of potential liability, and thereby secures coverage in the event a claim is subsequently made.

*Id.* at 612.  *See also In re DBSI, Inc.*, Case No. 08-12687-PJW, 2011 WL 3022177 at *3 (Bankr. D. Del. July 22, 2011) (citations omitted); *Chatz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 372 B.R. 368, 376 (N.D. Ill. 2007) (applying Florida law, and holding that a notice of

circumstances section is "properly characterized . . . as a 'hybrid claims-made policy.'"); *U.S. Fire Ins. Co. v. Fleekop*, 682 So.2d 620 (Fla. 3d DCA 1966), review denied, 691 So.2d 1082 (Fla. 1997) (permitting notice of circumstances during extended reporting period and noting that it was undisputed that mere notice of an occurrence or potential claim would have sufficed to trigger claims-made coverage).

On August 31, 2009, within the Policy Period, the Official Committee of Unsecured Creditors appointed in BUFC's bankruptcy case (the "Committee") filed a motion (the "Derivative Standing Motion") requesting that the Bankruptcy Court grant the Committee derivative standing to investigate, assert and prosecute claims against officers, directors and prepetition professionals of BUFC and certain of its affiliates (but not including the Bank) (collectively, the "Debtors"). *See* SOF at ¶ 25. The Derivative Standing Motion asserted, among other things, that claims on behalf of the bankruptcy estates of the Debtors against then-current and former officers and directors of the Debtors worth pursuing might exist, including claims for breach of fiduciary duty. *Id.* The Committee did not limit or otherwise restrict the types or number of claims it anticipated would or could be discovered in connection with its investigation, as USSIC was fully aware. *See* SOF at ¶ 26; Music Dep. at 32:5-6 ("I am not saying that I thought their motion was limited, no."); Music Dep. at 43:4-6 ("It certainly indicates in the motion that they are looking to prosecute any and all claims."); Music Dep. at 49:5-6 ("No. No, it is not limited to the securities litigation."); Music Dep. at 49:7-9 (Q. And the motion referred to any and all potential claims, correct? A. The motion did do that, yes."); Music Dep. at 57:2-3 ("I didn't view it as temporally limited, no.").

On September 1, 2009, within the USSIC Policy period, the Insureds delivered a copy of the Derivative Standing Motion to USSIC. *See* SOF at ¶ 27. By letter dated October 19, 2009

(the "10/19/09 USSIC Letter"), USSIC acknowledged receipt of the Derivative Standing Motion and agreed to accept the Derivative Standing Motion as a "notice of circumstances," stating that "USSIC will, however, accept the Derivative Standing Motion as a notice of circumstances that may reasonably be expected to give rise to a Claim pursuant to Condition Section (B)(3) of the Policy." *See Id.* Importantly, USSIC perhaps could have objected to the Derivative Standing Motion as a "notice of circumstances" in light of the broad language and potentially unlimited scope of the Derivative Standing Motion. *See Resolution Trust Corp. v. Artley*, 24 F.3d 1363 (11th Cir. 1994); *but see Fla. Dep't of Fin. Servs. v. Nat'l Union Fire Ins. Co.*, No. 4:11cv242/RS-WCS, 2012 WL 760606 at *3 (N.D. Fla. Mar. 7, 2012) (rejecting insurer's characterization of the insured's timely notice as mere "boilerplate" where the insured's letter stated that it was aware of a claimant that intended to assert claims against the insured's former directors, officers and shareholders, for "wrongful acts including, but not limited to breach of duty, neglect, error, mistaken statement, misleading statement, omission or other wrongful acts . . . resulting in injury in excess of $5 million.")

Because USSIC affirmatively chose not to limit the scope of its acceptance of the Derivative Standing Motion as a "notice of circumstances" or otherwise require more specifics, but instead unconditionally accepted the Derivative Standing Motion as a "notice of circumstances," pursuant to Condition (B)(3) of the USSIC Policy, it cannot now disavow its acceptance. *Fleekop*, 682 So.2d at 628-29 ("[i]t is not in the interests of fairness or justice to permit an insurer to remain silent at the time of [sic] the purported notice is received, and then much later, after claims have been filed which may subject the insurer to some liability under the policy, permit the insurer to complain for the first time that notice was not sufficient.")

The Tax Refund Transfer Claims thus constitute Claims considered to have been made at the time of the Derivative Standing Motion, on August 31, 2009.   Accordingly, the Plan Administrator has established that coverage for the Tax Refund Transfer Claims exists under the USSIC Policy.

## VI.   NO POLICY EXCLUSIONS APPLY TO NEGATE COVERAGE

The Plan Administrator having established that a covered loss within the terms of the USSIC Policy exists, the burden shifts to USSIC to prove that the Tax Refund Transfer Claims are excluded from coverage under an applicable exception or exclusion.  *See Michigan Millers*, 140 F.3d at 925; *Hartford Accident*, 466 F.3d at 1296.

## A.   Prior Acts Exclusion

USSIC asserts that the "Prior Acts Exclusion (Broad Form)" contained in the USSIC Policy bars coverage in this case.  *See* Amended Answer, Second Affirmative Defense.  Indeed, this was the only exclusion on which USSIC relied in its 11/30/12 Denial Letter.  *See* SOF at ¶ 41.   The Prior Acts Exclusion (Broad Form) reads as follows:   "In consideration of the premium charged, it is agreed that [USSIC] will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed, in whole or part, prior to 11/10/2008."   USSIC Policy, Endorsement No. 2 (emphasis in original).

Notably, by their very nature, the Plan Administrator's Tax Refund Transfer Claims are based upon acts that indisputably occurred entirely in the first few months of 2009, well after November 10, 2008 – specifically, the two Tax Refund Transfers were approved and occurred in the January/February, 2009 time frame and in the March/April, 2009 time frame, respectively. *See* SOF at ¶¶ 15, 17, 18.  In the August 17, 2012, First Amended Complaint against the Insureds (the "First Amended Complaint"), the Plan Administrator alleged that the Tax Refund Transfers

13

were fraudulent transfers under Florida's Uniform Fraudulent Transfer Act (*see* West's F.S.A. § 726.106(2)), and that the Insureds breached their fiduciary duties owing to BUFC, the holding company, in authorizing and directing them.   The Plan Administrator later learned that, in fact, approximately $17 million of the second Tax Refund Transfer represented refunds due to BUFC, not the Bank, under the tax allocation agreement to which BUFC and the Bank were parties. *See* SOF at ¶ 19.   These wrongful acts occurred wholly after November 10, 2008, and indeed, USSIC admits as much.  *See* SOF at ¶ 21.

There is no evidence that the Tax Refund Transfers were pre-ordained by any decisions of officers or directors of BUFC prior to 2009.   Indeed, none of the BUFC entities had ever received a tax refund before January of 2009, and the decisions about the disposition of the tax refunds were *ad hoc* decisions made in 2009.  *See* SOF at ¶ 16.   Accordingly, the Tax Refund Transfer Claims cannot be said to have "arisen from" Wrongful Acts that occurred prior to the USSIC Policy inception date.

In sum, the Prior Acts Exclusion applies only to Claims based on Wrongful Acts that begin to occur before but are not concluded until after November 10, 2008, such as a vote by the board of directors before November 10, 2008, that is not implemented until later.   Here, the decisions to make the Tax Refund Transfers stand alone and occurred entirely in 2009.

**B.     Prior Notice Exclusion**

USSIC asserts that the "Prior Notice Exclusion," which it cited only in passing in a footnote in the 11/30/12 Denial Letter, bars coverage in this case.  *See* Amended Answer, Thirteenth Affirmative Defense.   The Prior Notice Exclusion states that USSIC will not be responsible for payment of Loss in connection with a Claim:

> arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any

policy of which this Policy is a renewal or replacement or which it may succeed in time.

USSIC Policy, Exclusion (H).

Like the rest of the USSIC Policy, this exclusion is effective as of November 10, 2008, at 12:01 a.m. E.S.T.  *See* SOF at ¶ 1.  Importantly, the exclusion is written in the past tense:  where a claim which "has been reported" or notice "has been given."  As of the USSIC Policy inception date, the only matter that "had been reported" or for which notice "had been given" to a carrier on any other policy was the case of *Waterford Township General Employees Retirement System v. BankUnited Fin. Corp., et al.*, No. 08-CIV-22572 (S.D. Fla.) (the "Securities Fraud Action"). The Securities Fraud Action was a securities fraud class action based on alleged misrepresentations about the Bank's loan portfolio and the financial condition of the Bank and its parent, BUFC, primarily in 2006, 2007, and early 2008.  The putative class period closed in June 2008, months before the inception of the USSIC Policy.   The allegations, facts and circumstances alleged in that case have absolutely nothing to do with the 2009 Tax Refund Transfers.

Moreover, to the extent that USSIC relies on any notice to the carrier under the Directors & Officers Liability Policy No. ECO6800963 issued by St. Paul Mercury Insurance Company (the "Travelers Policy"), the Travelers Policy is not a "policy of which [the USSIC] Policy is a renewal or replacement or which it may succeed in time."  USSIC admits that the USSIC Policy is not a renewal of the Travelers Policy.  *See* SOF at ¶ 3.  Nor does the USSIC Policy "replace" the Travelers Policy:  the USSIC Policy does not step into the shoes of, or substitute for, the Travelers Policy.  The terms and conditions of the two policies are not the same.  Nor does it "succeed in time."  Although the Travelers Policy period initially was due to expire at 12:01 a.m. on November 10, 2008, when the USSIC Policy incepted, as required by USSIC's contingency

[requirement] in its binder, BUFC purchased an extended reporting period under the Travelers Policy until 12:01 a.m. on November 10, 2009. *See* SOF at ¶ 14. Thus, the USSIC Policy period is completely concurrent with the Travelers Policy period, as extended by the extended reporting period. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp.2d 376, 403 (D. Del. 2002) ("where, as here, two policies are in effect during the same time period, a plaintiff's assertion of claims under one of two concurrently running coverages cannot rely on such a rationale to bar the assertion of coverage claim under the second policy.")

## VII.   CONCLUSION

The uncontroverted and incontrovertible facts show that the Plan Administrator is entitled to summary judgment on Phase I of this case. There are no genuine issues of material fact to be tried in Phase I, and this matter should be decided as a matter of law in the Plan Administrator's favor. For the foregoing reasons, the Plan Administrator respectfully requests that the Court enter summary judgment against U.S. Specialty Insurance Company as to that portion of Count I of the Complaint in this case that has not been stayed by prior order of the Court, and any such other relief as the Court deems just, equitable and proper.

Respectfully submitted, this 21st day of November, 2014.

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ Todd C. Meyers
Todd C. Meyers
Georgia Bar No. 503756
(Admitted Pro Hac Vice)
Alfred S. Lurey
Georgia Bar No. 461500
(Admitted Pro Hac Vice)
Matthew W. Levin
Georgia Bar No. 448270
(Admitted Pro Hac Vice)
Caroline W. Spangenberg
Georgia Bar No. 669055
(Admitted Pro Hac Vice)
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
tmeyers@kilpatricktownsend.com
alurey@kilpatricktownsend.com
mlevin@kilpatricktownsend.com
cspangenberg@kilpatricktownsend.com


-and-



KOZYAK TROPIN & THROCKMORTON, P.A.

/s/ Corali Lopez-Castro
Corali Lopez-Castro
Florida Bar No. 863830
2525 Ponce De Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800 (Telephone)
(305) 372-3508 (Facsimile)

Counsel for the Plan Administrator.

17

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the foregoing has been filed with the Clerk of

the Court using CM/ECF and served via transmission of Notices of Electronic Filing generated

by CM/ECF this 21st day of November, 2014.

By:    <u>/s/ Corali Lopez-Castro</u>
           Corali Lopez-Castro
