UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:14-cv-20893-UU

CLIFFORD ZUCKER,

      Plaintiff,

vs.

U.S. SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment (D.E. 52) and Defendant's Motion for Summary Judgment (D.E. 50). The Motions are fully briefed and ripe for disposition.

Plaintiff Clifford Zucker, is the Plan Administrator under the Fourth Amended Joint Plan of Liquidation of BankUnited Financial Corporation ("BUFC"). Plaintiff, in his capacity as Plan Administrator and as assignee of Humberto Lopez and Ramiro Ortiz, filed the Complaint initiating this action on March 10, 2014. D.E. 1. The Complaint contains three Counts: (I) Breach of Contract; (II) Violation of Florida Statute § 624.155(1)(b)(1) (statutory bad faith); and (III) Common-Law Bad Faith. *Id.* The Court has bifurcated this action and stayed Counts II and III pending resolution of Count I. D.E. 31. Both parties have moved for summary judgment and ask the Court to determine whether the insurance policy issued by Defendant provides coverage for claims previously asserted against Lopez and Ortiz.

THE COURT has considered the Motions, the pertinent portions of the record, and is otherwise fully advised on the premises. For the following reasons Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

## I. FACTS

The following facts are undisputed unless noted otherwise:

BUFC is a holding company headquartered in Coral Gables, Florida. D.E. 62 at 8. BankUnited FSB (the "Bank") is a federally chartered savings bank and wholly-owned subsidiary of BUFC. *Id.* Humberto Lopez is the former senior executive vice president and chief financial officer of BUFC and held a similar position with the Bank. D.E. 53 ¶ 2. Ramiro Ortiz is the former chief executive officer of BUFC and held a similar position with the Bank. *Id.* Lopez and Ortiz are insured persons under Defendant U.S. Specialty Insurance Company's ("USSIC") directors and officers ("D&O") insurance policy that is at issue in this case. *Id.*; D.E. 1-1. The dispute before the Court is whether the USSIC policy covers the claims made against Lopez and Ortiz in the U.S. Bankruptcy Court for the Southern District of Florida, Case No. 09-19940, Adversary No. 11-03055, (the "D&O Action") for fraudulent transfers to the Bank of tax refunds payable to BUFC in breach of Lopez's and Ortiz's fiduciary duties to BUFC.

The USSIC policy is a "claims made" policy that has a policy period from November 10, 2008, to November 10, 2009. D.E. 1-1; D.E. 62 at 8. The USSIC policy insured the directors and officers of BUFC for any claims that were brought against them during the policy period. D.E. 1-1 at 3. The USSIC policy followed in time a claims made policy issued by St. Paul Mercury Insurance Company ("Travelers") that had a policy period from November 10, 2007, to November 10, 2008. D.E. 50-11 at 5. As a

condition to issuance of the USSIC policy, BUFC was required to purchase, and purchased, an extension of the discovery period for the Travelers policy that allowed the insureds to report claims to Travelers from November 10, 2008, to November 10, 2009, but only covered claims based on wrongful acts committed prior to November 10, 2008.  D.E. 51-9 at 69; D.E. 50-17.

The USSIC policy defines a claim by listing six types of events that can constitute a claim, including "(1) any written demand for monetary or non-monetary relief; [or] (2) any civil proceeding commenced by service of a complaint or similar pleading."  D.E. 1-1 at 3.

The policy contains a Section titled "Conditions" that contains several provisions addressing when and how coverage is triggered, and the parties' respective obligations with respect to covered claims.  Two of the Conditions are relevant to the issues here: the Notice of Claims and Reporting Provisions and the Interrelationship of Claims provision.  Under the Notice of Claims and Reporting Provisions, Condition (B)(3), states:

> If, during the Policy Period or the Discovery Period (if applicable), the Insureds become aware of any circumstances which may reasonably be expected to give rise to a Claim against the Insureds and if, before the end of the Policy Period . . . the Insureds give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such Wrongful Act, then any Claim subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act described in such notice will be considered to have been made at the time such notice of circumstances was given.

*Id.* at 8.  The Interrelationship of Claims provision states that "[a]ll Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of

related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made." *Id.* at 8.

The USSIC policy also contains a number of exclusions, two of which are at issue in this case: the Prior Acts Exclusion and the Prior Notice Exclusion. The Prior Acts Exclusion states that "the Insurer will not be liable to make any payment of Loss in connection with a Claim arising out of, based upon or attributable to any Wrongful Act committed or allegedly committed, in whole or in part, prior to 11/10/2008." *Id.* at 15. The Prior Notice Exclusion states that "the Insurer will not be liable to make any payment of Loss in connection with a Claim . . . arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time." *Id.* at 6.

The policy defines a Wrongful Act as any "actual or alleged act, error, misstatement, misleading statement, omission or breach of duty." *Id.* at 5. BUFC paid a $700,000 premium for $20,000,000 in liability coverage. *Id.* at 13.

### A.    *Financial Difficulties at BUFC and the Bank*

On January 31, 2008, the Office of Thrift Supervision ("OTS") began a risk-focused examination of the Bank. D.E. 62 at 9. In July 2008, OTS placed an examiner on-site at the Bank and he remained in that position through May 2009. D.E. 50-9 at 21:12-16. The examiner met with Lopez twice a day to discuss a variety of issues concerning the Bank, including problem loans, the liquidity of the bank, major

policies and procedures, and financial performance. *Id.* at 22:6-15. On August 8, 2008, OTS issued a report regarding its risk-focused examination. D.E. 62 at 9.

As of August 2008, there were news reports that BUFC's capitalization rating would be downgraded unless the Bank raised $400 million. D.E. 53-9 at 30. Also in August 2008, BUFC announced that it was contributing $80 million to the Bank to help boost its capital position. *Id.*

On September 17, 2008, a class action for violations of the anti-fraud provisions of the federal securities law was filed against Ortiz, Lopez, and Alfred R. Camner, the Chairman of BUFC's Board and Chief Executive Officer of BUFC at the time. D.E. 50-2. The class action alleged that the defendants had committed securities fraud by knowingly or recklessly making materially false statements and misrepresentations. *Id.* at 40. According to the amended complaint filed in the class action, the defendants represented that, among other matters, the Bank had "historically conservative" lending practices when the Bank's mortgage portfolio actually consisted of high risk mortgages, and that the Bank was a "well-capitalized" institution, which was not true. D.E. 50-3 ¶¶ 21-42. The complaint alleged that BUFC's stock price plummeted once the statements were revealed to be untrue. *Id.* ¶ 43.

Also in September 2008, the Bank and BUFC entered into Stipulations and Consents to Issuance of Order to Cease and Desist with OTS. D.E. 50-4; D.E. 50-5. In the stipulations, OTS found that BUFC "engaged in unsafe and unsound practices" that resulted in the Bank "being in an unsatisfactory condition" and "resulted in the need for greater levels of capital and allowance for loan and lease losses." D.E. 50-4 at 3. As part of the OTS's Order to Cease and Desist, BUFC was required to implement a plan to raise capital. D.E. 50-6 at 2-3. On February 25, 2009, the Bank submitted a capital restoration

plan to OTS, and on April 14, 2009, OTS issued a Prompt Corrective Action Directive to the Bank. D.E. 62 at 9.

### B.    2009 Tax Transfers

On January 9, 2009, BUFC received a check from the U.S. Treasury in the amount of $19,871,221.06 in payment of a tax refund. D.E. 53-12. BUFC transferred this refund to the Bank. D.E. 53 ¶ 15. In March, 2009, the U.S. Treasury issued another check in the amount of $25,812,825.00 in payment of a second tax refund. *Id.* ¶ 18. This refund was wired directly to the Bank pursuant to Lopez's instruction on IRS Form 8302. *Id.* There was no order or directive from OTS instructing BUFC to transfer tax refunds to the Bank. *Id.* ¶¶ 17, 20.[1]

According to Tim Harris, the chief accountant for BUFC at the time, the January 2009 refund was "a return of estimated taxes paid solely by the Bank." D.E. 53-15 at 2. Harris also explained that BUFC and its non-bank subsidiaries were due $17 million from the March 2009 refund that had been wired directly to the Bank, but that none of this refund was transferred to these other entities at OTS's request. *Id.*

### C.    The D&O Insurance Policies

As explained previously, prior to the inception date of the USSIC policy, BUFC and its subsidiaries were insured by a D&O policy with Travelers. D.E. 62 at 8. In September, 2008, Travelers elected not to renew its D&O policy with BUFC. D.E. 50-16 at 3. An insurance broker working with BUFC contacted HCC Global Financial Products ("HCC"), the underwriter for USSIC's insurance policies, to

---

[1] The parties agree that no part of the tax transfers occurred on or before November 10, 2008. D.E. 53 ¶ 21; D.E. 57-2 ¶ 21.

solicit a quotation for a D&O insurance policy with a policy period beginning on November 10, 2008. D.E. 53-8. In preparing a quotation to submit to BUFC, HCC became aware that BUFC was in a "distressed financial condition" and Margaret Kingsley, an underwriter with HCC and a Rule 30(b)(6) witness for Defendant, thought that BUFC would not survive. D.E. 53-6 at 18:1-22:14. Ultimately, Kingsley decided to submit a quote to BUFC because "regulators will be watching every move they make." D.E. 53-9 at 67.

The quote was for a restrictive policy. Among other limitations, the policy was to be "RDI," or "retro date inception," meaning USSIC would not respond to claims based on any wrongful acts that had occurred before the inception date of the policy. D.E. 53-8; D.E. 53-6 at 13:24-14:2. Also, for additional protection, USSIC required that BUFC obtain a Discovery Period extension to the Travelers policy. D.E. 51-9 at 69. BUFC subsequently purchased the D&O insurance policy from USSIC with a policy period from November 10, 2008, to November 10, 2009. D.E. 62 at 8. BUFC also purchased the Discovery Period extension from Travelers. D.E. 53-11.

### D.      BUFC Files for Bankruptcy and Committee Formed to Investigate Claims

On May 21, 2009, OTS closed the Bank and appointed the Federal Deposit Insurance Company ("FDIC") as receiver for the Bank. D.E. 53 ¶ 22. On May 22, 2009, BUFC filed a petition for relief under chapter 11 of title 11, United States Code, in the United States Bankruptcy Court for the Southern District of Florida. *Id.* ¶ 23. On May 29, 2009, an Official Committee of Unsecured Creditors (the "Committee") was appointed in BUFC's bankruptcy case. *Id.* ¶ 24. The Committee retained counsel that

initiated a preliminary review of whether claims could be pursued against insiders of the Debtors, such as corporate officers, for the benefit of BUFC's bankruptcy estate. *Id.*

On August 31, 2009, the Committee filed a motion in BUFC's bankruptcy case (the "Derivative Standing Motion") asking the court to grant the Committee standing to "investigate, assert and pursue the Claims on behalf of the Estates and their creditors." D.E. 53-16 at 5. The claims to be investigated included "Claims arising from breaches of duties owed by the [current and former officers and directors] to the Debtors or their constituents, misrepresentations, failures to disclose and other wrongful acts, and negligence and malpractice committed by the other Potential Defendants." *Id.* at 4-5. The Derivative Standing Motion was silent with regard to any facts upon which any claims might be based and the dates when any wrongful conduct might have occurred.[2]

On September 1, 2009, counsel for Alfred Camner sent a copy of the Derivative Standing Motion to HCC, which was also acting as the claims administrator for the D&O policy issued by USSIC. D.E. 53-17. HCC responded with a letter dated October 19, 2009, stating that USSIC would accept the Derivative Standing Motion as "notice of circumstances that may reasonably be expected to give rise to a Claim pursuant to Condition Section (B)(3) of the Policy." D.E. 53-18 at 4.[3] The Derivative Standing Motion also was emailed to Travelers on August 31, 2009. D.E. 50-20.

---

[2]The Derivative Standing Motion was granted by the bankruptcy court on September 29, 2009. D.E. 53-19.

[3]Under Condition (B)(3), any claim made against the insureds within the scope of the types of claims described in the Derivative Standing Motion, would be considered to have been made at the time the notice of circumstances was given, i.e., September 1, 2009, within the policy period. D.E. 1-1 at 8.

On November 5, 2009, the Committee sent demand letters to Lopez, Ortiz, and Camner, stating that the Committee had concluded that it could bring claims against the officers arising from their breach of fiduciary duties of care to BUFC and their failure to perform their duties to BUFC in good faith. D.E. 62 at 10; D.E. 53-20. These letters indicated that the Committee's investigation was ongoing. D.E. 53-20. The demand letters were sent to USSIC as notice of claims made during the policy period. D.E. 50-23. Notice of the demand letters was also provided to Travelers. D.E. 50-25. On November 30, 2009, HCC sent a letter denying coverage for the claims because the demand letters "allege numerous Wrongful Acts occurring prior to November 10, 2008" and the claims were therefore barred by the Prior Acts Exclusion in Endorsement No. 2. D.E. 50-27 at 5. USSIC also reserved its rights to assert other coverage defenses, including the Prior Notice Exclusion, Prior Litigation Exclusion, and Regulatory Exclusion. D.E. 50-27 at 6; D.E. 62 at 10.

### E.    *Underlying Lawsuit*

On December 5, 2011, the Committee filed a lawsuit (the "D&O Action") against Camner and Lopez in bankruptcy court. D.E. 50-32. The D&O complaint contained four counts and was structured as follows: Count I against Lopez and Camner for breach of fiduciary duty for failure to implement and maintain effective risk management procedures and internal controls, ultimately resulting in the receivership of the Bank and BUFC's insolvency; Count II against Lopez and Camner for breach of duty of care for providing inaccurate and incomplete information to BUFC's board of directors concerning the lack of internal controls and unreasonably risky lending practices at the Bank in reliance upon which BUFC's board authorized expenditures and the issuance of debt that artificially prolonged BUFC's existence and

caused it to incur additional losses; Count III against only Camner alleging that in August 2008, Camner breached his fiduciary duty to BUFC when he caused the board of directors to approve the infusion of $80 million into the bank without investigating whether, or disclosing to BUFC's board that, among other matters, the capital infusion would not forestall regulatory seizure of the Bank; Count IV against Camner and Lopez alleging that in breach of their fiduciary duties to BUFC, they authorized and directed tax refund transfers in the approximate aggregate amount of $45.7 million to the Bank that were fraudulent under Florida's Uniform Fraudulent Transfer Act. *Id.* Counts I through III were based on "Relevant Conduct" occurring between January 1, 2007, and May, 2009; Count IV was based solely on conduct that allegedly occurred on January 9, 2009, and in March, 2009. *Id.*

On February 2, 2012, the Committee moved to amend the complaint to drop Camner and add Ortiz as a defendant solely with respect to Count IV. D.E. 62 at 10. On February 6, 2012, notice of the motion to amend, with the proposed amended complaint, was provided to USSIC. *Id.*; D.E. 50-39. On August 17, 2012, after the bankruptcy court granted the motion to amend, Plaintiff filed the amended complaint in the D&O Action, adding Ortiz as a defendant solely with respect to Count IV. D.E. 53-24.

On June 14, 2012, Plaintiff Clifford Zucker was substituted for the Committee as the plaintiff in the D&O Action. D.E. 62. On November 21, 2012, Plaintiff made a written settlement demand in the D&O Action to Ortiz and Lopez to settle Count IV of the D&O complaint for $11.25 million. D.E. 62 at 11; D.E. 53-25. On the same day, counsel for Lopez forwarded the settlement demand to USSIC. *Id.* On November 30, 2012, HCC sent a letter to Lopez's and Ortiz's counsel denying coverage. D.E. 53-28. On June 4, 2013, Bankruptcy Judge Laurel Isicoff approved a Settlement and Assignment Agreement

reached by Zucker, Lopez, and Ortiz.  D.E. 62 at 11.  The agreement settled Count IV for $15 million, to be paid by either the insureds or USSIC, and assigned to Zucker any rights Lopez or Ortiz had under the USSIC policy, including any and all claims and causes of action they had against USSIC. D.E. 1 ¶¶ 49, 50.  Counts I through III were settled for a separate amount of money to be paid by Travelers.  D.E. 50-29.  Pursuant to this settlement agreement, Plaintiff filed the present action.

## II.  LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

## III. DISCUSSION

Plaintiff and Defendant each moved for summary judgment for the Court to determine whether or not the USSIC insurance policy provides coverage for Plaintiff's claims. Defendant raises four arguments in support of its Motion: (1) the Prior Acts Exclusion bars coverage for the D&O Action because the D&O lawsuit is itself the relevant claim and arises, in part, out of wrongful acts occurring prior to November 10, 2008; (2) the Prior Acts Exclusion bars coverage even if Count IV is a separate claim because Count IV arises out of Wrongful Acts that occurred prior to November 10, 2008; (3) alternatively, the Interrelationship of Claims provision requires that Count IV, even if it is a separate claim, be collapsed into a single claim with the other counts, and, therefore, the Prior Acts Exclusion bars coverage because the D&O Action as a whole arises out of a series of wrongful acts, some of which occurred prior to November 10, 2008; and (4) the Prior Notice Exclusion bars coverage because the insureds gave notice of the D&O Action to Travelers, which the USSIC policy replaced or succeeded in time.[4]  In support of its Cross–Motion, Plaintiff argues (1) Count IV is a timely made claim; and (2) there are no policy exclusions that bar coverage.

The USSIC policy is a claims made policy, which means it provides coverage for loss arising from claims first made during the policy period against the insureds for wrongful acts. *See* D.E. 1-1.  Claims made policies require insureds to provide notice of the circumstances that could reasonably give rise to a future claim.  Coverage under claims made policies is "'triggered' by the insured's . . . provision of notice to the insurer within the policy term" of a potentially covered claim.  *Pantropic Power Prods, Inc. v.*

---

[4]Defendant also argued in its briefing that if Count IV is a separate, unrelated claim from the other counts in the D&O Action, then notice was not timely given.  At oral argument, the Court understood that Defendant has abandoned this argument.

*Fireman's Fund Ins. Co.*, 141 F. Supp. 2d 1366, 1369 (S.D. Fla. 2001). "If that potential claim is actually made against the insureds at a later date, the policy will treat that subsequent claim as having been first made at the time the notice of potential claim is given to the insurer, even if the subsequent claim is made after the end of the policy period." *New Appleman on Insurance Law* § 26.08[2] (Jeffrey E. Thomas & Aviva Abramovsky eds., 2014).

The parties agreed at oral argument, and in their briefing, that Defendant received timely notice of circumstance that could give rise to a potential claim by receiving, and accepting, the Derivative Standing Motion. The parties also do not dispute that Count IV was encompassed by this notice. Thus, Count IV was a timely made claim and coverage under the USSIC policy was triggered. The Court must therefore determine whether the Prior Acts Exclusion or the Prior Notice Exclusion bars coverage.

### A. Prior Acts Exclusion

The Prior Acts Exclusion in Endorsement Number 2 provides the following:

> In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of Loss in connection with a Claim **arising out of, based upon or attributable** to any Wrongful Act committed or allegedly committed, in whole or in part, prior to 11/10/2008.

D.E. 1-1 at 15 (emphasis added). As explained previously, Defendant argues that there are three ways this exclusion bars coverage: (1) the claim is the D&O lawsuit in its entirety, which arises out of wrongful acts committed, in whole or in part, prior to November 10, 2008; (2) Count IV itself arises out of wrongful acts committed, in whole or in part, prior to November 10, 2008; and (3) the Interrelationship of Claims provision collapses Count IV of the D&O Action into a single claim with Counts I through III, which arise

out of wrongful acts committed, in whole or in part, prior to November 10, 2008.  The Court addresses

each of these in turn.

### 1.    Definition of a Claim

The USSIC policy defines a claim as: "(1) any written demand for monetary or non-monetary

relief, (2) any civil proceeding commenced by service of a complaint or similar pleading . . ." D.E. 1-1 at

3.  There are six definitions in total and they are separated by an "or" that follows the fifth definition.  *Id.*

Defendant argues that the D&O action instituted on December 5, 2011, must be considered a single claim

under the second definition listed in the policy because "civil proceeding commenced by service of a

complaint" means a single lawsuit, and not the separate causes of action within a complaint.  Plaintiff argues

that Count IV of the D&O complaint should be considered a separate claim under the first definition in the

policy because Count IV can be classified as a written demand for monetary relief.

Under Florida law, the interpretation of an insurance policy is a question of law for the Court.

*Technical Coating Applicators, Inc. v. U.S. Fid. & Gaur. Co.*, 157 F.3d 843, 844 (11th Cir. 1998);

*Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010).  "Insurance contracts are construed

according to their plain meaning, with any ambiguities construed against the insurer and in favor of

coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007).  "Although ambiguous

provisions are construed in favor of coverage, to allow for such a construction the provision must actually

be ambiguous."  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).

Courts may not "rewrite contracts" and must enforce a clear and unambiguous policy provision "according

to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (internal quotations and

citations omitted).  "[A] true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Culbreath Isle Property Owners Ass'n Inc. v. Travelers Cas. & Sur. Co. of Am.*, 982 F. Supp. 2d 1298, 1303 (M.D. Fla. 2013) (internal quotations and citations omitted).  "Finally, although case law may generally be informative for determination of a coverage issue, 'the language of the policy is the most important factor' in such a determination." *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 573-74 (Fla. 2010) (quoting *Taurus*, 913 So. 2d at 537).  "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

Defendant, in support of its argument, cites to a number of cases that hold where a claim is defined by the policy to be a "civil proceeding commenced by service of a complaint," the lawsuit as a whole is considered the claim and not a particular count in a lawsuit.  *See Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 497 (1st Cir. 2005); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 341-42 (5th Cir. 2002); *Cmty. Found. for Jewish Educ. v. Fed. Ins. Co.*, 16 F. App'x 462, 466-67 (7th Cir. 2001).  *Cox Commc'ns, Inc. v. Nat'l Union Fire Ins. Co.*, 708 F. Supp. 2d 1322, 1326 (N.D. Ga. 2010); *Greenwich Ins. Co. v. Lecstar Corp.*, No. CIV A105-CV-3275-RLV, 2006 WL 2052375, at *3 (N.D. Ga. July 20, 2006); *XL Specialty Ins. Co. v. Agoglia*, No. 08 CIV.3821(GEL), 2009 WL 1227485, at *8 (S.D.N.Y. Apr. 30, 2009) *on reconsideration sub nom. Murphy v. Allied World Assur. Co.*, No. 08 CIV. 3821 (GEL), 2009 WL 1528527 (S.D.N.Y. May 29, 2009) *and aff'd sub nom. Murphy v. Allied World Assur. Co.* (U.S.), 370 F. App'x 193 (2d Cir. 2010).  Defendant also relies on

a Florida appellate case that held the USSIC policy definition means that "once a lawsuit is filed, the entire lawsuit represents a claim." *Acosta, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1D09-3215, 2010 WL 1709176, at *12 (Fla. Dist. Ct. App. Apr. 29, 2010); D.E. 57-3.  That opinion, however, has been withdrawn and this conclusion and its related analysis were not included in the subsequently issued opinion. *Acosta, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 39 So. 3d 565 (Fla. Dist. Ct. App. 2010).

Plaintiff cites to two cases that define a claim to be a "demand for money damages or other relief, regardless of the form in which that demand is presented." *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1109 (Del. 2007); *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825 (E.D.N.Y. 1996). *Spectrum* and *Faraday* held that a single lawsuit could include multiple claims. *Spectrum*, 930 F. Supp. at 847.

Neither position is persuasive.  The cases Defendant relies on, except *Community Foundation for Jewish Education v. Federal Insurance Co.*, 16 F. App'x 462 (11th Cir. 2001), do not address the policy language found in the USSIC policy, and the fact that it provides multiple definitions for a claim, including a "written demand for monetary or non-monetary relief" and "any civil proceeding commenced by service of a complaint or similar pleading."  These cases also do not address the scenario present here, where claims that could have been brought separately were brought in a single civil proceeding.  And while *Community Foundation for Jewish Education* involves an insurance policy where claim is defined as a "(i) written demand for monetary damages, [or] (ii) civil proceeding commenced by the service of a complaint or similar pleading," the analysis was concerned with giving effect to the policy language

16

"commenced by the service of a complaint" instead of determining whether multiple claims can be present in a single civil proceeding. *Id.* at 465. Thus, *Community Foundation* held that where a claim is made by filing a lawsuit, there is no new claim made when the complaint is amended to add more causes of action. *Id.* at 466-67 ("But a 'claim' here is defined as a civil proceeding 'commenced' by a complaint, and because such a civil proceeding can only be commenced once, a new claim did not arise under the Policy.").

The cases Plaintiff relies on have different policy definitions for what constitutes a claim. In *Spectrum*, the policy defined a claim as "a written demand by a third party for monetary damages, including the institution of suit or a demand for arbitration." 930 F. Supp. at 845. In *Faraday*, the policy defined a claim as "1. any written or oral demand for damages or other relief against any of the Assureds; 2. any civil, [or] criminal, administrative or regulatory proceeding initiated against any of the Assureds." 918 A.2d at 1107. The interpretation of different policy language is not very helpful to interpreting the USSIC policy. *Spectrum* and *Faraday* also did not ultimately hold that a claim can also be a separate cause of action within a complaint. Instead, in *Spectrum*, the court found that the allegations contained in five separate complaints could be "grouped into four categories of alleged wrongdoing" and that each of these categories was a separate claim. 930 F. Supp. at 831, 847. The court's reasoning as to why these categories were separate claims was that "each represent[ed] discrete demands for money damages notwithstanding that they were procedurally brought together in one suit." *Id.* at 847. In *Faraday*, the court did not determine what constituted a claim, and instead remanded the case to the trial court to determine which causes of action arose "out of the same underlying wrongful conduct." 918 A.2d at 1109. Plaintiff does not explain

how this reasoning would apply to the D&O action, or why these principles would support Count IV being a separate claim.

Ultimately, the Court cannot accept Defendant's argument that the definition of claim can be used to curtail coverage in conjunction with the Prior Acts Exclusion. The USSIC policy lists six possible acts that can constitute a claim separated by the word "or," and thereby allows a number of alternative methods for triggering coverage under the policy. *Cf. Brown v. Brown*, 432 So. 2d 704, 710 (Fla. Dist. Ct. App. 1983) ("The first rule of construction is that when the word 'or' connects two clauses, the clauses must be viewed as alternatives, with neither clause being a limitation on the other."); *Pompano Horse Club v. State*, 111 So. 801, 805 (Fla. 1927) ("In its elementary sense the word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that'; a connective that marks an alternative. . . . It often connects a series of words or propositions, presenting a choice of either."). One of those options is a "written demand," which in common usage might be, for example, a demand letter, but might also be a lawsuit or a single count or group of counts in a single lawsuit or related lawsuits. In other words, this list employs what appears to this Court to be plain and unambiguous language and, contrary to Defendant's arguments, does not appear to require a construction that would render the listed events as mutually exclusive. *See Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1331 (S.D. Fla. 2007) ("In general, coverage clauses in insurance policies are interpreted in the broadest possible manner to effect the greatest amount of coverage."). Consequently, the Court finds that simply because Count IV was brought in the same lawsuit with other claims based on wrongful acts pre-dating the USSIC policy's inception, it is not, for that reason, barred by the Prior Acts Exclusion.

The fallacy in Defendant's argument is demonstrated by the facts of this case and the different ways that claims were made against Lopez and Ortiz. While Defendant insists that the D&O lawsuit is the singular claim for purposes of the policy, Ortiz was not named as a defendant in the D&O Action until the Committee filed the motion seeking leave to file an amended complaint and adding him as a defendant only with respect to Count IV. D.E. 53-22. The parties agree that this motion for leave to amend and the proposed amended complaint were provided to USSIC as notice of a claim being made against Ortiz. D.E. 53-23; D.E. 62 at 10. The proposed amended complaint, however, was not a "civil proceeding commenced by service of a complaint" because it could not be a civil proceeding without approval from the court. Therefore, as to Ortiz, the claim being made was a written demand for monetary relief, despite being made as part of the D&O action. Accordingly, Defendant's strict construction of the D&O action being a single claim because the initial lawsuit was a "civil proceeding commenced by the service of a complaint" falls apart when looking at the facts of this case.[5]

2.    Count IV and the Prior Acts Exclusion

---

[5] If, however, the Eleventh Circuit were to agree with Defendant that the operative claim is the D&O Action as a whole because it is a "civil proceeding commenced by the service of a complaint," then the fact that Ortiz was brought into the D&O Action by the proposed amended complaint would still demonstrate that a separate claim, in the form of a written demand, was made against Ortiz. *See Cmty. Found. for Jewish Educ.*, 16 F. App'x at 467 ("If the insured is brought into the litigation for the first time through the amended complaint, the claim is obviously new to that entity; thus it is a claim first made."). As stated above, the proposed amended complaint was submitted to USSIC as notice of a claim for coverage. D.E. 53-23. At this point, as to Ortiz, the claim triggering coverage under the USSIC policy was a written demand for monetary relief, and not a civil proceeding commenced by service of a complaint, because the proposed amended complaint could not institute a civil proceeding without approval by the bankruptcy court. Thus the claim against Ortiz is a written demand for damages arising solely out of Count IV, and the Prior Acts exclusion does not bar coverage as to Ortiz based on the D&O Action being a civil proceeding commenced by service of a complaint.

Defendant argues that the Prior Acts Exclusion bars coverage for Count IV, even if it is considered a separate claim, because Count IV arises out of wrongful acts committed, in whole or in part, prior to November 10, 2008.  The amended D&O complaint alleged that Lopez and Ortiz breached their fiduciary duties of loyalty and care to BUFC by directing transfers that were fraudulent.  D.E. 50-33 ¶¶ 200, 201. Because, Defendant argues, certain of the wrongful acts causing BUFC's insolvency occurred prior to November 10, 2008, and the transfers were fraudulent for the very reason that BUFC was insolvent when they were made, the Prior Acts Exclusion bars coverage for Count IV.

As stated above, the Prior Acts Exclusions bars coverage for "any payment of Loss in connection with a Claim arising out of, based upon or attributable to any Wrongful Act committed or allegedly committed, in whole or in part, prior to 11/10/2008." D.E. 1-1 at 15.  In *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, the Florida Supreme Court held that the term "arising out of" is unambiguous and should be interpreted broadly even though used in an exclusion. 913 So. 2d 528, 539 (Fla. 2005).[6]  The Florida Supreme Court further stated, "[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident

_____

[6]The parties appear to agree that Florida law governs this action, despite the USSIC policy not having a choice of law provision, as Plaintiff asserted two counts arising under Florida common law and Florida statute and Defendant did not dispute that Florida law applies.  Further, the USSIC policy has an endorsement that explicitly provides that "[p]unitive damages are not insurable under Florida law." D.E. 1-1 at 14.  Even if the parties had disputed what law applies, it is clear that Florida law governs this action.  As a district court sitting in diversity jurisdiction, this Court must apply Florida's conflict-of-law rules.  *Shaps v. Provident Live & Acc. Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001).  In the absence of a contractual provision specifying governing law, Florida applies the doctrine of *lex loci contractus*, which provides that contracts are to be governed by the law of the state where the contracts are made or are to be performed.  *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974). The declarations page of the USSIC policy makes clear that the policy was incepted at BUFC's corporate office in Coral Gables, Florida.  D.E. 1-1 at 13.

to' or 'having a connection with.'" *Id.* (internal quotations and citations omitted).  The Florida Supreme Court subsequently noted that the "phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 293 (Fla. 2007).[7]

The exclusion at issue in *Taurus Holdings* was a products-completed operations hazard exclusion contained in a commercial general liability insurance policy issued to a gun manufacturer.  However, in reaching its decision the Florida Supreme Court cited with approval cases interpreting "arising out of" in the context of both coverage and exclusionary clauses in a variety of insurance policies, such as automobile insurance policies and errors and omissions insurance policies, making clear that the court's holding was not limited to the facts or the policy language of the *Taurus Holdings* case.  *Id.* at 535-36.  One subsequent opinion from the Eleventh Circuit and one order from another Florida district court have applied this interpretation of "arising out of" to exclusions found in D&O liability policies.  *See Eastpointe Condo. I Ass'n Inc. v. Travelers Cas. & Sur. Co. of Am.*, 379 F. App'x 906, 908 (11th Cir. 2010); *Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 6:13-cv-561, 2014 WL 5325728, at *6-7 (M.D. Fla. Oct. 20, 2014).

In *Eastpointe Condominium*, the Eleventh Circuit affirmed summary judgment for the insurer finding that a property damage exclusion barring coverage for any claim made "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property" applied to a breach of fiduciary duty claim brought by a unit owner against a condominium association.  379 F. App'x at 907.  In the claim

_____

[7] Prior to the *Taurus* opinion, at least one Florida appellate court noted that the phrase "arising out of" "is a much more encompassing standard than mere causation."  *Transamerica Ins. Co. v. Snell*, 627 So. 2d 1275, 1276 (Fla. Dist. Ct. App. 1993).

for breach of fiduciary duty, the unit owner alleged that the insured had failed in its duty to properly maintain the building's roof and air conditioning units and therefore water infiltrated the building and caused extensive damage. *Id.* at 908. The Eleventh Circuit agreed with the district court that because this claim depended upon the existence of property damage, it arose out of such property damage and the property damage exclusion barred coverage. *Id.* In *Bond Safeguard*, the district judge granted summary judgment for the insurer, finding that an exclusion barring coverage "for Loss in connection with a Claim made against an Insured . . . alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement" was "unambiguously broad" and precluded coverage for tort claims that depended on the existence of actual or alleged contractual liability. 2014 WL 5325728, at *6-7.

Based on the expansive interpretation Florida courts give the phrase "arising out of" in the insurance context, even when used in an exclusion clause, the Prior Acts Exclusion in the USSIC policy broadly and unambiguously bars coverage for any claim that originates from, has a connection with, flows from, grows out of, or depends on any wrongful act committed in whole or in part prior to November 10, 2008.[8] With this in mind, the Court turns to the allegations of Count IV to determine whether the Prior Acts Exclusion precludes coverage.

---

[8] *See Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1340 (S.D. Fla. 2009) (finding that although exclusionary language was "extremely broad" it was "equally clear and without ambiguity" and barred coverage); *see also Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (finding the policy construction principle that exclusionary provisions must be construed strictly against the insurer is only applied when there is a genuine ambiguity in the exclusion).

Count IV alleged that Lopez and Ortiz breached their fiduciary duties to BUFC by directing and approving fraudulent transfers, in violation of Florida's Uniform Fraudulent Transfer Act, of BUFC's property to the Bank.  D.E. 50-33 ¶¶ 175, 199, 200, 201.   "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  Here, the alleged breach of Lopez's and Ortiz's fiduciary duties was approval of the transfers of the tax refunds to the bank. The amended and initial D&O complaints alleged that the transfers were fraudulent because they "were made to the Bank, an insider, for antecedent debt, within one year before the filing of the Bankruptcy Case, at a time when the Holding Company was insolvent.  At the time of the Transfers, the persons in control of the Bank had reasonable cause to believe the Holding Company was insolvent." D.E. 50-33 ¶ 175; D.E. 50-32 ¶ 171.  This allegation parrots the language of Florida's Uniform Fraudulent Transfer Act, Fla. Stat. § 726.106(2).  As such, Count IV depends on BUFC being insolvent at the time the tax refund transfers were made.

Count I of the D&O complaint alleges that from January 2007 through May 2009, Camner and Lopez breached their fiduciary duties for a variety of failings, including failing to protect diminution of BUFC's most valuable asset, the Bank, by seeing that the Bank was managed properly.  D.E. 50-33 ¶ 179; D.E. 50-32 ¶ 175.  These breaches allegedly caused such a diminution in value of the Bank that they "**caus[ed] the Holding Company to declare bankruptcy**."  D.E. 50-33 ¶ 181 (emphasis added).

Accordingly, the Prior Acts Exclusion does bar coverage for Count IV, even when considered a separate claim.  This is because Count IV depends on BUFC being insolvent, and BUFC's insolvency, as

the complaint alleges, depends on wrongful acts allegedly committed, in whole or in part, prior to November 10, 2008. Therefore Count IV depends on wrongful acts committed, in whole or in part, prior to November 10, 2008. *See Eastpointe Condo.*, 379 F. App'x at 908 ("Bursten's claim thus depended on upon the existence of the property damages . . . In light of the broad interpretation given to the phrase 'arising out of,' we agree with the district court that the property damage exclusion applies to Bursten's breach of fiduciary duty claim."); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (no insurance coverage under pollution exclusion containing "arising out of" language, because "[a]lthough the alleged conduct was negligence in performing the site assessment, Priority's claim depends upon the existence of the environmental contamination").

### 3.   Interrelationship of Claims Provision

Although the Court has already found that the Prior Acts Exclusion bars coverage for Count IV when it is considered a separate claim, the Court addresses the other arguments raised in the parties' briefing and at oral argument.

Defendant's final argument as to why the Prior Acts Exclusion bars coverage is that the Interrelationship of Claims provision collapses Count IV into a single claim with Counts I through III of the D&O Complaint. Because these counts must be viewed as a single claim, Defendant argues, the Prior Acts Exclusion bars coverage because Counts I through III are based on wrongful acts occurring, in whole or in part, prior to November 10, 2008. Plaintiff argues that (1) it is improper to apply the Interrelationship of Claims provision to the Prior Acts Exclusion; and (2) the facts underlying Count IV are separate and

distinct from the facts underlying Counts I through III.  In its reply, Defendant argues that the
Interrelationship of Claims provision works in tandem with the Prior Acts Exclusion.

The Interrelationship of Claims provision states:

All Claims alleging, arising out of, based upon or attributable to the same facts,
circumstances, situations, transactions or events or to a series of related facts,
circumstances, situations, transactions or events will be considered to be a single Claim and
will be considered to have been made at the time the earliest such Claim was made.

D.E. 1-1 at 8.  This provision is in the "Conditions" section of the USSIC policy.

"[U]nder Florida law, in construing insurance policies, courts should read each policy as a whole,
endeavoring to give every provision its full meaning and operative effect." *Penzer v. Transp. Ins. Co.*,
545 F.3d 1303, 1306 (11th Cir. 2008) (internal quotations and citations omitted).  "Policy terms are given
their plain and ordinary meaning and read in light of the skill and experience of ordinary people." *Id.*
"Provisions excluding or limiting the liability of the insurer are construed even more strictly against the
insurer than those provisions that allow coverage . . . and the burden of proof rests on the insurance
company to demonstrate that the coverage was inapplicable." *Id.* at 1309 (internal quotations and citations
omitted).  "If exclusions are reasonably susceptible to more than one meaning, they are considered
ambiguous and are to be construed in favor of the insured." *Id.*

At oral argument, Plaintiff maintained that this provision allows lawsuits filed after the policy period
to be deemed made during the policy period if they relate to an earlier made claim.  Plaintiff also argued
that there is no cross-reference in the policy between the definition for claim and the Interrelationship of
Claims provision that would cause a reasonable insured to understand that the Interrelationship of Claims
provision was further modifying, let alone limiting, the definition of claim.  Accordingly, there is no reason

why the clause should be understood to define a claim and therefore apply to the term "Claim" as used in the Prior Acts Exclusion.

Plaintiff's argument proposes a reasonable construction of the USSIC policy. The language of the Interrelationship of Claims provision appears to be directed to determining when a claim is made. It is not worded similarly to the provisions in the USSIC policy that define specific terms, and an ordinary person would not necessarily read the provision as redefining a claim as being inclusive of all related claims. As this interpretation is reasonable and is in favor of the insured, the Court agrees and finds that the Interrelationship of Claims provision does not further delimit the meaning of "Claim" for the purposes of the Prior Acts Exclusion.

Defendant relies heavily on two published cases from other district courts to argue that the Interrelationship of Claims provision defines "Claim" for the purposes of the Prior Acts Exclusion: *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995 (C.D. Cal. 2009) and *Nomura Holding Am., Inc. v. Fed. Ins. Co.*, – F. Supp. 3d –, No. 13 Civ. 5913, 2014 WL 4473374 (S.D.N.Y. Sept. 11, 2014). But this Court finds neither persuasive in the instant case.

In *Jeff Tracy*, the court found that the same interrelationship of claims provision applied to two lawsuits that had been filed separately, and that this provision meant the lawsuits "may be considered a single Claim for purposes of" applying an exclusion within the policy. *Jeff Tracy, Inc.*, 636 F. Supp. 2d at 1006. However, in *Jeff Tracy*, the plaintiff did not propose a reasonable alternative construction of the interrelationship of claims provision. *See id.* at 1007 ("Given the structure of the D&O Policy, one would reasonably expect all subparts of Condition (B) to be numbered consistently and listed together within and

beneath that condition.  Condition (C), by contrast, is set out separately and, unlike the clear subparts of

Condition (B), enumerated by use of a capital letter.").  Here, Plaintiff has proposed a reasonable

construction that gives effect to the language of the Interrelationship of Claims provision while also taking

into account its placement in the insurance policy and the expectations of a reasonable insured.  Also,

importantly, the court in *Jeff Tracy* did not address the issues raised here, i.e., whether this provision can

be read as further defining a claim for purposes of an exclusion when it is not worded like other definitions

and is not located in the definitions section of the policy.

In *Nomura*, the court found that the related claims provision there could operate as a coverage bar

because it collapsed later-filed lawsuits with earlier-filed lawsuits, and because the earlier lawsuits were filed

before the policy period of the relevant insurance policy, the related claims provision barred coverage.  *See*

2014 WL 4473374, at *18 ("Because the Underlying Actions are Related Claims to *Plumbers' Union*,

Section 13(g) deems them to have been first made in 2008, and they thus fall outside the ambit of coverage

provided by the Policies.").  But, the related claims provision in *Nomura* specifically allowed for this result,

stating that "[a]ll Related Claims shall be treated as a single Claim first made on the date the earliest of such

Related Claims was first made . . . regardless of whether such date is before or during the Policy Period."

*Id.* at *11.  Also, the holding in *Nomura* is in agreement with the construction proposed by the Plaintiff,

that the Interrelationship of Claims provision determines when a claim will be considered to have been

made.  This result is not unique to *Nomura*, and other cases within the Southern District of Florida have

reached similar results.  *See Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1338

(S.D. Fla. 2009) ("If claims are considered 'related claims,' the only coverage available is that which was

available under the policy in effect at the time the first claim is deemed to have been made."). Here, there is no dispute that Count IV is a timely made claim, and there is no need to rely on the Interrelationship of Claims provision to determine when it was made. Instead, Defendant is arguing that the Interrelationship of Claims provision further defines the term "Claim" for the purposes of the Prior Acts Exclusion. Although this may be a reasonable construction of the policy, Plaintiff's proposed construction is also reasonable, and favors the insured, and will therefore be adopted by the Court.

### B.   Prior Notice Exclusion

Defendant also argues that the Prior Notice Exclusion in the USSIC policy bars coverage. The Prior Notice Exclusion bars coverage for any claim "arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time." D.E. 1-1.

Defendant argues that this provision bars coverage because notice of the D&O action, the securities litigation, the Derivative Standing Motion, and the Demand Letters was also provided under the Travelers policy. Defendant argues that the USSIC policy succeeds the Travelers policy in time, and therefore the exclusion applies. Defendant's argument rests on the fact that notice of the D&O action was provided to Travelers in December, 2011, whereas notice of the proposed amended complaint in the D&O action was not provided to USSIC until February, 2012. Plaintiff argues that this court can only consider notice that was given under the Travelers policy prior to the inception of the USSIC policy. As the only notice given prior to the inception of the USSIC policy was notice of the securities litigation, Plaintiff argues that this

exclusion does not bar coverage because Count IV is not related to the wrongful acts underlying the

securities litigation.  Further, Plaintiff argues that the USSIC policy does not follow the Travelers policy in

time because Plaintiff purchased an extended discovery period for the Travelers policy.

The plain meaning of this exclusion is that it bars coverage for claims where "notice has been given"

or a claim "has been reported" under a previous policy.  This allows USSIC to reduce its risk by avoiding

liability for any claim that was noticed under a prior policy.  *See Zunenshine v. Exec. Risk Indem., Inc.*,

1998 WL 483475, at *8 (S.D.N.Y. Sept. 5, 2007) ("To permit an insured to recover for claims arising

from the same 'fact[s], circumstance [s], situation[s], transaction[s], event[s] or Wrongful Act[s]' alleged

in a pending lawsuit or made the subject of a prior notice given to another insurer 'would be to grant the

insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage

for risks not assumed.'").  In other words, this exclusion is drafted to protect USSIC from claims that are

made within its policy period, but are related to claims previously reported or noticed under a prior policy.

*See* David J. Marchitelli, Annotation, *Construction and Application of Exclusion Provisions of*

*Directors and Officers Insurance Policy, Exclusive of Regulatory and Insured vs. Insured Exclusions*,

34 A.L.R. 6th 345 (2008) ("The courts have enforced prior notice exclusions in cases in which it was found

that notice of claims and of circumstances likely to give rise to claims had been given under prior policies

before the date of inception of the policies at issue, even though the underlying claims may have been made

against the insureds after that inception date .").

Defendant's argument that notice need not have been given prior to the inception of the USSIC

policy is contrary to the language of the exclusion.  Defendant's position also results in the absurd

conclusion that Lopez and Ortiz would have been forced to provide notice to USSIC prior to providing notice to Travelers, meaning that they would have had to purposefully mail notice to USSIC first, then wait some undetermined period of time before mailing notice to Travelers. This result is not supported by the policy language and a reasonable insured would not understand that he would be required to follow these steps.

Defendant cites an unpublished Northern District of Texas case to advocate that this result is sound. *See United Investors Realty Trust v. Hartford Specialty Co.*, No. 01-cv-2083, 2003 WL 22350647 (N.D. Tex. Sept. 2, 2003). That case, however, dealt with a much broader prior notice exclusion that barred coverage for "any Claim, Wrongful Act, or circumstance **if notice thereof is given** under any directors and officers liability . . . policy, the term of which incepted prior to the Inception Date of this Policy." 2003 WL 22350647, at *3 (emphasis added). The policy language here is clear that notice had to **have been given** under a prior policy, meaning before the USSIC policy incepted. The securities litigation is the only claim for which notice was provided prior to the inception of the USSIC policy. The wrongful acts underlying the securities litigation were that Lopez, Ortiz, and Camner had committed securities fraud by knowingly or recklessly making materially false statements and misrepresentations. The wrongful acts giving rise to Count IV are that Lopez and Ortiz breached their fiduciary duty by directing fraudulent transfers of the tax refunds. These wrongful acts are not similar or related and therefore the Prior Notice Exclusion does not bar coverage.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion, D.E. 52, is DENIED.  It is further

ORDERED AND ADJUDGED that Defendant's Motion, D.E. 50, is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of February, 2015.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided to: Counsel of Record